## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Chris Wolters,

          Plaintiff, on behalf of
himself and all those similarly situated,

v.

Sweepsteaks Limited d/b/a Stake.us,

          Defendant.

**CLASS ACTION COMPLAINT**

**Case No. 0:25-cv-3280**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.  Defendant Stake.us ("Stake"), a real-money internet casino, operates illegally in Minnesota. Users of the website buy digital tokens, bet them on games of chance including, for example, virtual slot machines and simulated "rock, paper, scissors," and redeem any gain for cryptocurrency, which can, in turn, be converted to US currency—all in just a few clicks.

2.  Lawful gambling in Minnesota is limited to "charitable gaming." Charitable gaming is limited to bingo, raffles, paddlewheels, tipboards, and pull-tabs conducted by a licensed non-profit, in a licensed physical place, supervised by a licensed gambling manager, and subject to hundreds of other regulations.[1] Minnesota law requires gambling profits to be spent on charitable purposes.

3.  Stake's operation in Minnesota is an egregious violation of Minnesota law. Stake must be enjoined from operating inside Minnesota, and it must disgorge every cent it has earned from Minnesotans' gambling losses.

---

[1] Minnesota permits gambling in certain limited and express circumstances: the Minnesota State Lottery; parimutuel horse racing; or gambling conducted under the jurisdiction of the federal Indian Gaming Regulatory Act. Stake.us does not fit any of these categories.

## PARTIES

4.      Plaintiff Chris Wolters is a natural person and citizen of the State of Minnesota.

5.      Defendant Sweepsteaks Limited d/b/a Stake.us ("Stake") is a for-profit Cyprus Limited Company, the primary purpose of which is to operate the website Stake.us. Its principal place of business is located at 28 Oktovriou, 313 Omrania BLD, Limassol, CY-3105, Cyprus. Defendant operates an office in the United States located at 13101 Preston Rd, Ste 110-5027, Dallas, TX, 75240.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the Class is a citizen of a different State than Defendant.

7.      This Court has personal jurisdiction over Defendant because it conducts substantial, continuing, and systematic business in Minnesota by advertising and offering its online gambling operation to Minnesota citizens and subsequently establishing ongoing economic relationships with them. Furthermore, Defendant knows that Minnesota residents use Stake because users must disclose their home state when registering for an account to use the website, and because Minnesota is not included in Stake's own list of States in which Stake may not be accessed.

8.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District and Defendant is subject to personal jurisdiction in this District. Furthermore, venue is proper in this District under 28 U.S.C. § 1391(c)(3) because Defendant is a foreign business entity.

## FACTUAL BACKGROUND

**A. Minnesota's Public Policy and Statutory Scheme Limit Gambling to "Charitable Gaming," Expressly Excluding Stake's Gambling Operation**

9.      Unless it is "lawful gambling," anyone who operates a "gambling place" or "gambling device" is guilty of a gross misdemeanor. Minn. Stat. § 609.76, subd. 1(1), (4). The same is true for anyone who "[r]eceives, records, or forwards bets or offers to bet." *Id.* at subd. 1(7).

10.     "Lawful gambling" is "the operation, conduct or sale of bingo, raffles, paddlewheels, tipboards, and pull-tabs" conducted in conformity with Chapter 349 of the Minnesota Code and the Minnesota Gambling Control Board's ("MNGCB") regulations. Minn. Stat. § 349.12, subd. 24.

11.     A license granted by the MNGCB is required to conduct lawful gambling. Minn. Stat. § 349.16, subd. 1.

12.     Only an "organization" is eligible to obtain such a license. *Id.* An "organization" is "any fraternal, religious, veterans, or other nonprofit organization." Minn. Stat. § 349.12, subd. 28. An organization cannot obtain a license unless "it has established a permanent location in Minnesota where the gambling records required by this chapter will be kept and has . . . established a gambling bank account in Minnesota." Minn. R. 7861.0220, sub. 2(B).

13.     A licensed organization "may conduct lawful gambling only on premises it owns or leases" in Minnesota, under the supervision of an on-site gambling manager.[2] Minn. Stat.

---

[2] All lawful gambling must occur under the supervision of a licensed "gambling manager." Minn. Stat. § 349.167. The MNGCB may not issue a gambling manager license to anyone who "has engaged in conduct the [MNGCB] determines is contrary to the public health, welfare, or safety or the integrity of lawful gambling." Minn. Stat. § 349.167, subd. 2(a)(4). If an organization's gambling manager dies, the organization must contact the MNGCB

3

§ 349.18. Leases must be approved by the MNGCB. § 349.18. Licensed organizations must apply for a "premises permit" before conducting legal gambling. The application requires disclosure of, among other details, the bank account number for the account where gross gambling profits will be deposited. Minn. R. 7861.0240, sub. 2(F).

14.     Gross profits from lawful gambling may only be spent on "lawful purposes or allowable expenses." Minn. Stat. § 349.15, subd. 1. There are a limited number of "lawful purposes." Minn. Stat. § 349.12, subd. 25(a). Such purposes include charitable donations, such as to "an individual or family suffering from poverty, homelessness, or disability" (subd. 25(a)(2)); to state wildlife management projects such as trail maintenance (subd. 25(a)(13)); to fund celebrations held in honor of an individual's military service, not to exceed $5000 annually (subd. 25(a)(17)); or to pay for repairs to a licensed gambling premises, in an amount not to exceed 5% of gross gambling profits per fiscal year (subd. 25(a)(22)). An organization that spends less than 30% of gross gambling profits on lawful purposes is "automatically placed on probation" and subject to sanctions unless it reaches 30% within one year. Minn. Stat. § 349.15, subd. 1(c).

15.     Hundreds of rules promulgated by the MNGCB regulate every detail of the operation of lawful gambling. For instance, all lawful gambling must be conducted on a cash-only basis and exclusively while the licensed gambling premises are open for regular business (Minn. R. 7861.0260, sub. (1)(B), (H)); paddlewheels must spin at least 4 times before stopping (Minn. R. 7861.0300, sub. (1)(E)); used raffle tickets must be kept on site for 3.5 years after an organization reports them on its tax returns (Minn. R. 7861.0310, sub. 11); and organizations must collect a "winner verification form" from anyone who wins more than $600 on an electronic pull-

---

within one business day to establish a plan to replace the gambling manager. Minn. Stat. § 349.167, subd. 2(d)(1).

tab, which includes a signed affirmation from the winner that they are at least 18 years old and will report their winnings to the IRS (Minn. R. 7861.0285, sub. 3(E)(1)).

**B. Stake.us is an illegal online casino under Minnesota law.**

16.    Stake is a website that hosts internet games that simulate traditional casino and other games of chance, ranging from virtual scratch-off tickets (Figure 1) and live blackjack (Figure 2) to "rock, paper, scissors" (Figure 3) and dozens of other Stake exclusive games (Figure 4).



**(Figure 1)**



**(Figure 2)**



**(Figure 3)**



**Figure (4)**

17.     Individuals who play these games ("Players") wager Stake's proprietary digital tokens—Stake Cash and Gold Coins—on the outcomes of Stake's various games. Players cannot play Stake's games without wagering either Stake Cash or Gold Coins.

18.     Stake Cash is redeemable for cryptocurrency at a ratio of 1-to-1 with the US Dollar. Per Stake's own Terms and Conditions, Stake Cash "is redeemable at an implied rate of 1 Stake Cash per 1 USD. As such, the amount of cryptocurrency that can be redeemed per 1 Stake Cash will be determined by the market price of that cryptocurrency in USD at the time of such redemption (as determined in our discretion)." Cryptocurrency can easily be exchanged for US currency.

19.     Gold Coins are not redeemable and only have value on Stake.

20.     Players can purchase Stake Cash and Gold Coins on Stake. Through different bundles, Players receive practically 1 Stake Cash and 10,000 Gold Coins for every $1 USD they spend. For example, Players can spend $20 USD to obtain 20.05 Stake Cash and 200,000 Gold Coins.

21.    The vast majority of Players purchase and wager Stake Cash to gamble with it as if it were real currency.

**i.   Stake receives and records bets in violation of Minnesota criminal law.**

22.    Receiving and recording bets is a gross misdemeanor under Minn. Stat. § 609.76, subd. 1(7).

23.    A "bet" is a "bargain whereby the parties mutually agree to a gain or loss by one to the other of specified money, property, or benefit dependent upon chance." Minn. Stat. § 609.75, subd. 2.

24.    Each time a Player wagers Stake Cash or Gold Coins, they and Stake mutually agree to a gain or loss by one to the other in the amount of the value of the wager.

25.    Stake Cash constitutes "money," "property," and a "benefit" because it can be redeemed for cryptocurrency, which is considered "money" by most federal courts[3] and can be seamlessly converted to US currency, and because it is a credit that extends a Player's privilege to play Stake's games.

26.    The outcome of Stake's games are dependent upon chance because they are controlled by an algorithm that simulates randomness.

27.    Accordingly, each instance of a Player wagering Stake Cash on the outcome of a Stake game is a "bet" because it is a "bargain whereby" the Player and Stake "mutually agree to a gain or loss" in the amount of the value of the wagered Stake Cash, which is "dependent upon chance."

---

[3] *See United States v. Harmon*, 474 F. Supp. 3d 76, 90 (D.D.C. 2020) (citing multiple federal district court decisions holding that Bitcoin qualifies as "money," generally based on the principle that cryptocurrencies are used to purchase things).

28.     Stake receives and records these bets in the natural course of its operation, thus violating Minn. Stat. § 609.76, subd. 1(7).

### ii. Stake.us and each of its games is a "gambling device" operated in violation of Minnesota criminal law.

29.     A "gambling device" is "a contrivance the purpose of which is that for a consideration a player is afforded an opportunity to obtain something of value, other than free plays . . . the award of which is determined principally by chance." Minn. Stat. § 609.75, subd. 4.

30.     The statutory definition of "gambling device" explicitly incorporates a "video game of chance," which is "a game or device that simulates one or more games commonly referred to as poker, blackjack, craps, hi-lo, roulette, or other common gambling forms, though not offering pecuniary award or gain to its players." Minn. Stat. § 607.75, subd. 8. "[A]ny video game" that is "primarily a game of chance, and has no substantial element of skill involved" or "[a]wards game credits or replays and contains a meter or device that records unplayed credits or replays" is also a "video game of chance." *Id.*

31.     Wagering and purchasing Stake Cash and Gold Coins constitutes consideration conferred by Players upon Stake.

32.     By wagering and purchasing Stake Cash and Gold Coins, Players are afforded the opportunity to obtain more Stake Cash or Gold Coins.

33.     Stake Cash is "something of value, other than free plays" because it can be redeemed for cryptocurrency, which can simply be exchanged for US currency.

34.     The outcomes of each of Stake's games are determined by chance because they are controlled by an algorithm that simulates randomness.

35.     Accordingly, Stake and each of its games is a gambling device because their purpose is for Players to wager Stake Cash and Gold Coins for the opportunity to obtain more Stake Cash or Gold Coins, the outcome of which is determined by chance.

36.     Stake's games also constitute "video games of chance" because they simulate poker, blackjack, craps, hi-lo, roulette, and other gambling forms, the outcomes of which are determined by chance without any substantial element of skill involved.

37.     Accordingly, Stake and each of its games are gambling devices that were "set[] up for the purpose of gambling" in violation of Minn. Stat. § 609.76, subd. 1(4).

### iii. Stake is not compliant with either Chapter 349 of the Minnesota Code or the MNGCB's regulations.

38.     Stake contains gambling games other than bingo, raffles, paddlewheels, tipboards, and pull-tabs, which are the only forms of "lawful gambling" allowed in Minnesota. Minn Stat. § 349.12, Subd. 24.

39.     Stake does not have the required license to conduct lawful gambling in Minnesota, as required by § 349.16, Subd. 1.

40.     Stake can not obtain the required license because it is not a non-profit organization. § 349.12, Subd. 28.

41.     Stake does not conduct its gambling business in Minnesota on physical premises that it owns or leases, as required by Minn. R. 7861.0220, sub. 2(B).

42.     Stake does not employ a licensed gambling manager approved by the MNGCB, as required by Minn. Stat. § 349.167.

43.     Stake does not spend any of its gross profits from gambling on the "lawful purposes" contemplated by Minn. Stat. § 349.12, subd. 25(a).

44.     Stake does not conduct its gambling business on a cash-only basis, as required by Minn. R. 7861.0260, sub. 1(B).

45.     Stake is non-compliant with hundreds of additional statutes and regulations that govern the conduct of gambling businesses in Minnesota.

**C. Stake deceptively markets itself to Minnesota consumers as a legal "Social Casino."**

46.     Stake deceptively brands itself as a "Social Casino," which it describes as "an online platform that offers casino - style games for entertainment purposes, without involving real money . . . The primary goal is entertainment rather than financial gain, making it a fun and social alternative to traditional online casinos."[4]

47.     Stake deceptively represents that "NO PURCHASE IS NECESSARY TO PARTICIPATE OR PLAY THE GAMES" and "THE PLATFORM DOES NOT OFFER REAL MONEY GAMBLING, AND NO ACTUAL MONEY IS REQUIRED TO PLAY."

48.     While Players can occasionally obtain single-digit-USD worth of Stake Cash and Gold Coins without purchase, for instance by mailing in a long handwritten statement on a four-by-six-inch post card for five Stake Cash that Stake can reject at its discretion, the only way Players can continue to play once they run out is by paying Stake for more Stake Cash and Gold Coins.

49.     Stake deceptively represents that "YOU CANNOT PURCHASE STAKE CASH. STAKE CASH CAN BE OBTAINED ONLY THROUGH FREE, PROMOTIONAL OFFERS."[5]

50.     As demonstrated in Figure 5, Stake markets Stake Cash, which is redeemable for cryptocurrency at a 1-to-1 ratio with the US dollar, as a "free bonus" that comes with the purchase of Gold Coins, which are not redeemable.

---

[4] https://help.stake.us/en/articles/8570538-what-is-a-social-casino-and-sweepstakes (accessed August 15, 2025).
[5] https://stake.us/policies/terms (accessed August 15, 2025).



**(Figure 5)**

51.    The amount of "bonus" Stake Cash that comes with the purchase of valueless Gold Coins is practically equal to the amount of US dollars spent to obtain the Gold Coins.

52.    Regardless of how Stake represents this type of transaction, Players can and do purchase Stake Cash at a 1-to-1 ratio with the US dollar, gamble with the Stake Cash on Stake's games, and redeem Stake Cash as cryptocurrency at a 1-to-1 ratio to the US Dollar. It is obvious that Players buy Stake Cash to gamble with as a proxy for real currency, which makes it indistinguishable from gambling with poker chips at a casino, where a person exchanges U.S. Dollars for casino chips at a 1-to-1 ratio and can later exchange those chips for U.S. Dollars.

53.    By deceptively representing the transaction for Stake Cash and, thereby, the nature of its business, Stake also misrepresents the legality of its business.

54.    Stake further deceptively represents the legality of its business in Minnesota via the list of "Excluded Territories" in its Terms and Conditions. Stake urges that "IF YOU LIVE IN ANY OF THE EXCLUDED TERRITORIES IDENTIFIED BELOW, DO NOT PROCEED ANY FURTHER AS YOU ARE NOT ELIGIBLE TO ACCESS OR USE THE PLATFORM, CREATE

A CUSTOMER ACCOUNT, PLAY THE GAMES OR INTERACT WITH STAKE IN ANY OTHER WAY." The list of Excluded Territories includes anywhere outside the continental United States and Hawaii, Washington, New York, Nevada, Idaho, Kentucky, Michigan, Vermont, New Jersey, Delaware, West Virginia, Pennsylvania, Rhode Island, Connecticut, Maryland, Louisiana, Montana, and Arizona.

55.     Minnesota is not included in the list of Excluded Territories, even though internet casinos are illegal in Minnesota. However, by excluding Minnesota from this list, Stake represents to consumers that its gambling platform is legal in Minnesota.

**D.  No enforceable agreements exist between Players in Minnesota and Stake.**

56.     "The general rule" in Minnesota "is that a contract entered into in violation of a statute, such as the pursuit of a business, profession, or occupation without procuring a license or permit required by law for the protection of the public, is void." *Lew Bonn Co. v. Herman*, 135 N.W.2d 222, 225 (Minn. 1965); *accord Handy v. St. Paul Globe Pub. Co*, 42 N.W. 872, 873 (Minn. 1889) ("A contract which requires or contemplates the doing of an act prohibited by law is absolutely void").

57.     A "void contract" is "[a] contract that is of no legal effect, so that there is really no contract in existence at all." Black's Law Dictionary (12th ed. 2024).

58.     Stake's Terms and Conditions grant a license to Players to participate in its website, which hosts gambling activity in a manner plainly prohibited by Minnesota statutes and public policy intended to protect the public.

59.     Accordingly, any purported "agreement" between Players in Minnesota and Stake is void under Minnesota law and, thus, it is as if the sham agreement never existed.

60.     Furthermore, insomuch as the agreements to arbitrate disputes within Stake's Terms and Conditions are severable from the rest of the Terms and Conditions, such agreements have also never been formed, do not exist, and are unenforceable.

## FACTS SPECIFIC TO PLAINTIFF CHRIS WOLTERS

61.     Chris Wolters, Plaintiff, first gambled on Stake on April 3, 2023. Between then and February 1, 2025, Plaintiff bought Stake Cash with cryptocurrency 1829 times at a cost of approximately $80,438.53 based on the value of the cryptocurrencies he used at the time. He is currently in recovery for gambling addiction.

62.     Between November 16, 2024 and January 9, 2025, Plaintiff was able to purchase Stake Cash with his debit card. Plaintiff does not know why this option became available, nor why it was cut off. He used his debit card to purchase Stake Cash 117 times at a cost of $3,620.

63.     Plaintiff played a variety of Stake's games, including slot machines (such as "Duel at Dawn," shown in Figure 6), scratch-off tickets, Plinko (Figure 7), and other games.



**(Figure 6)**



(**Figure 7**)

64.    Plaintiff regularly gambled on Stake for up to 18 hours a day, confirmed by his iPhone's data on screen-time.

65.    Plaintiff would use Stake's "autobet" feature (demonstrated in, but not limited to, the scratch-off context by Figure 8) so he could gamble all day while he worked. He would set a wager amount for a particular game, and Stake would repeatedly bet the wager until Plaintiff either manually stopped it or he ran out of Stake Cash.



(**Figure 8**)

66.    Due to Plaintiff's excessive use of Stake, he quickly climbed up Stake's "Loyalty Ladder," which is how Stake refers to its tiered "VIP Program." VIP users "benefit from a range

of exclusive promotions, reload bonuses, and bonus codes" and receive "enhanced support from a dedicated VIP host" via an encrypted texting app.[6]

67.     Plaintiff was a Platinum V VIP when he stopped using Stake, which means he placed more than 5 million Gold Coins and Stake Cash worth of bets. Plaintiff's "VIP Host" would periodically deposit Stake Cash into Plaintiff's account. Plaintiff would almost immediately wager and lose all of the Stake Cash he received through the VIP program, after which he would purchase more.

68.     While Plaintiff previously would gamble beyond using Stake, his gambling problem never got as out of control because of Minnesota's gambling regulations. For instance, while Plaintiff would purchase pull-tabs with which to gamble, he could only purchase them in-person with cash and had to leave whenever the business that sold them closed.

69.     Conversely, Plaintiff could engage in gambling binges on Stake for over 24 hours at a time, using any money or credit he could access to acquire Stake Cash. As a result of the debts he accumulated to fund his Stake addiction, Plaintiff lost his house, his car, and even his pets.

70.     Plaintiff currently sees a counselor multiple times a week to help in his recovery from gambling addiction.

71.     Plaintiff's story is exactly what Minnesota's public policy of putting strict limitations on gambling seeks to prevent.

## CLASS ALLEGATIONS

72.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of the following Class:

---

[6] https://stake.us/blog/vip-program-levels-benefits-rewards (accessed August 15, 2025).

All Minnesota residents who have paid and lost money, cryptocurrency or other things of value on Stake within the relevant statute of limitations.

Plaintiff specifically excludes from the Class:

      a.      Stake's employees, officers, directors, or heirs; and

      b.      This Court, this Court's direct family members, and this Court's personnel.

73.    This class action satisfies all requirements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), including, but not limited to, numerosity, commonality, typicality, adequacy, and predominance.

74.    **Numerosity:** Consistent with Fed. R. Civ. P. 23(a)(1), the proposed Class is "so numerous that joinder of all members is impracticable."

75.    In June 2025, Stake was visited 33.05 million times in the United States. It was the 298th most visited website in the United States for that month.[7]

76.    Plaintiff estimates that at least thousands, if not tens or hundreds of thousands, of those visitors were Minnesota residents.

77.    The numerosity requirement of Rule 23 is met.

78.    **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual Class members.

79.    Common questions of law or fact that will be dispositive of the claims of the Class include, but are not limited to:

      a.      Whether Stake is a real-money gambling internet casino;

      b.      Whether real-money gambling internet casinos are legal in Minnesota;

---

[7] *See* https://www.semrush.com/website/stake.us/overview/ (accessed August 15, 2025).

c.      Whether Stake's operations violate Minnesota public policy;

d.      Whether Plaintiff and the Class wagered and lost money or other things of value on Stake;

e.      Whether Plaintiff and the Class are entitled to recover their gambling losses from Stake;

f.      Whether Stake deceived Plaintiff and the Class in a manner violative of Minnesota's consumer protection statutes; and

g.      Whether Stake was unjustly enriched in the amount of Plaintiff's and the Class's net gambling losses.

80.    **Typicality:** Plaintiff's claims are typical of the Class's claims in that (a) Plaintiff paid money or other things of value to gamble on Stake, (b) Plaintiff lost money or other things of value by gambling on Stake, (c) Plaintiff was deceived by Stake's misrepresentations about the legality of its business, and (d) Plaintiff is entitled to recover his gambling losses from Stake.

81.    **Adequacy:** Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff "will fairly and adequately protect the interests of the class." Plaintiff has no adverse or conflicting interests to the proposed Class members. He has retained counsel competent and experienced in complex class action litigation who possess the necessary financial resources to adequately and vigorously litigate this class action.

82.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impractical. Prosecution of separate actions by individual Class members would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for Defendant. Furthermore, Stake

misrepresents the nature and legality of its business, so Class members do not know to consult an attorney. Finally, due to the vastly unequal market power between Class members and Defendant, a class action may be the only way to ensure all Class members' claims are adjudicated. Plaintiffs know of no difficulty that would make a class action in this case unmanageable.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### RECOVERY OF MONEY LOST PURSUANT TO MINN. STAT. § 541.20

83.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

84.   Under Minn. Stat. § 541.20, "Every person who, by playing at cards, dice, or other game . . . shall lose to any person so playing or betting any sum of money or any goods . . . may sue for and recover such money by a civil action, before any court of competent jurisdiction."

85.   Plaintiff, Class members, and Stake are all "person[s]."

86.   Plaintiff and Class members played "cards, dice," and "other game[s]" on Stake. Stake has games that simulate card games like poker and blackjack, dice games like craps and sic bo, and other games ranging from slot machines to arcade-style games.

87.   Plaintiff and the Class lost "money or any goods" by gambling on Stake because they lost Stake Cash, which they purchased with money or other things of value and could redeem for cryptocurrency, which is easily exchangeable for US currency.

88.   Stake is a "person so playing" cards, dice, or other games against Plaintiff and the Class because it owns, operates, and directly profits from Plaintiff's and the Class's gambling losses. Every time Plaintiff or the Class plays a game on Stake, they play against Stake. When Plaintiff and the Class lose, Stake wins.

89.     Accordingly, Plaintiff and the Class "may sue for and recover" their gambling losses from Stake.

## SECOND CLAIM FOR RELIEF
### VIOLATION OF MINNESOTA'S PREVENTION OF CONSUMER FRAUD ACT
### MINN. STAT. § 325F.69

90.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

91.     "The act, use, or employment by any person of any fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement, or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise . . . is enjoinable." Minn. Stat. § 325F.69, subd. 1.

92.     "For purposes of [§ 325F.69] . . . an unfair or unconscionable act or practice is any . . . act, or practice that: (1) offends public policy as established by the statutes, rules, or common law of Minnesota; (2) is unethical, oppressive, or unscrupulous; or (3) is substantially injurious to consumers." Minn. Stat. § 325F.69, subd. 8.

93.     Stake is a "person" because it is a "business entity." Minn. Stat. § 325F.68, subd. 3.

94.     Stake's business practices are unfair and unconscionable because (1) operating an unlicensed internet casino violates Minnesota's public policy as established by its statutes, rules and common law limiting "lawful gambling" to charitable gaming; (2) deceptively operating an illegal casino is unethical, oppressive, and unscrupulous; and (3) Stake's operations in Minnesota have substantially injured Plaintiff and the Class.

95.     By misrepresenting its illegal gambling business as a legal "social casino," Stake also engages in the act, use, and employment of fraud, false pretense, false promise, misrepresentation, misleading statement and deceptive practices.

96.     Stake engages in these unlawful acts "with the intent that others rely thereon in connection with the sale of merchandise." The statutory definition of "merchandise" includes "goods, commodities, intangibles . . . or services." Minn. Stat. § 325F.68, subd. 2. Stake sells Stake Cash—which is a good, a commodity, and an intangible—to consumers so that they can access Stake's gambling services. Stake deceptively misrepresents the nature and legality of its business with the intent that consumers rely thereon in connection with the sale of Stake Cash and Stake's gambling services.

97.     "[A]ny person injured by a violation of [Minn. Stat. § 325F.69] may bring a civil action and recover damages, along with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Minn. Stat. § 8.31, subd. 3a.

98.     Accordingly, as a result of Stake's violations of Minn. Stat. § 325F.69, Plaintiff and the Class are entitled to recover their gambling losses from Stake, as well as costs and attorneys' fees.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF MINNESOTA'S DECEPTIVE TRADE PRACTICES ACT**
**MINN. STAT. § 325D.44**

99.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

100.    Stake's conduct violates the following subsections of Minn. Stat. § 325D.44, subd. 1:

> A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: . . .
> (2) causes likelihood of confusion or misunderstanding as to the . . . approval or certification . . . of goods or services;

21

(3) causes likelihood of confusion or misunderstanding as to . . . certification by another; . . .

(5) represents that goods or services have sponsorship [and] approval . . . that they do not have . . .

(9) advertises goods or services with intent not to sell them as advertised; . . .

(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; . . .

(13) engages in . . . unfair or unconscionable acts or practices; or

(14) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

101.    By misrepresenting the legality of its gambling business in Minnesota, Stake violated Minn. Stat. § 325D.44, subd. 1(2), (3), and (5) because it caused confusion and misunderstanding regarding the approval and certification of Stake by the Minnesota legislature and the Minnesota Gambling Control Board.

102.    By misrepresenting the nature of the transaction for Stake Cash as a "free bonus," Stake violated Minn. Stat. § 325D.44, subd. 1(9) and (11) because it advertised Stake Cash at a price of $0, while intending to sell it at a 1-to-1 ratio with the US dollar.

103.    Stake's conduct violates Minn. Stat. § 325D.44, subd. 1(13) because it is both unfair and unconscionable. Per Minn. Stat. § 325D.44, subd. 2, the standard of proof for a violation of § 325D.44, subd. 1(13) is the one articulated in Minn. Stat. § 325F.69, subd. 8: "an unfair or unconscionable act or practice is any . . . act, or practice that: (1) offends public policy as established by the statutes, rules, or common law of Minnesota; (2) is unethical, oppressive, or unscrupulous; or (3) is substantially injurious to consumers." Stake's conduct satisfies each element.

104.    Stake's conduct violates Minn. Stat. § 325D.44, subd. 1(14) because it created confusion and misunderstanding in manners similar to those contemplated by the other subsections.

105.   For these violations, Plaintiff and the Class are entitled to bring a civil action to recover damages, costs, and attorneys' fees under Minn. Stat. § 8.31, subd. 3a, and for injunctive relief, costs, and attorneys' fees under Minn. Stat. § 325D.45.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF MINNESOTA'S FALSE STATEMENT IN ADVERTISING LAW
## MINN. STAT. § 325F.67

106.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

107.   "Any person, firm, corporation, or association who, with intent to sell . . . merchandise . . . publishes, disseminates, circulates, or places before the public… an advertisement of any sort . . . [that] contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, shall . . . be guilty of a misdemeanor, and any such act is declared to be a public nuisance and enjoined as such." Minn. Stat. § 325F.67.

108.   By deceptively misrepresenting its business as a Minnesota-legal, free internet arcade while intending to sell Stake Cash and its illegal gambling services, Stake violated Minn. Stat. § 325F.67.

109.   For these violations, Plaintiff and the Class are entitled to bring a civil action to recover damages, costs, and attorneys' fees under Minn. Stat. § 8.31, subd. 3a.

## FIFTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT

110.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

111.   In Minnesota, unjust enrichment is available as a remedy when no valid contract governs the dispute. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012).

112. No valid contract governs this dispute because "illegality has so tainted" the relationship between the Class and Stake that enforcing any purported contract between them "would be contrary to public policy." *Isle Wellness, Inc. v. Progressive N. Ins. Co.*, 725 N.W.2d 90, 93 (Minn. 2006).

113. Accordingly, Plaintiff and the Class may bring an unjust enrichment claim against Stake.

114. A party is "unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981).

115. "The elements of an unjust enrichment claim are: (1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it." *Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 196 (Minn. Ct. App. 2007) (citing *Acton Const. Co. v. State*, 383 N.W.2d 416, 417 (Minn. App. 1986)).

116. Stake was unjustly enriched in the amount of Plaintiff's and the Class's gambling losses because (1) Plaintiff and the Class conferred a benefit upon Stake by purchasing and wagering Stake Cash; (2) Stake appreciates, knowingly accepts, and profits from this benefit; and (3) it would be inequitable for Stake to retain this benefit because it was enriched through its illegal operation of an internet casino in Minnesota.

117. As a result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to recovery of their gambling losses.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and all others similarly situated, respectfully requests the following relief from this Court:

1.      Certify this case as a class action on behalf of the proposed Class defined herein;

2.      Appoint Plaintiff Chris Wolters as Class representative;

3.      Appoint the undersigned counsel as counsel for the Class;

4.      Grant judgment in favor of Plaintiff and the Class for violations of Minnesota's laws and public policy limiting lawful gambling to charitable gaming, for an award of all gambling losses suffered by Plaintiff and the Class pursuant to Minn. Stat. § 541.20;

5.      Grant judgment in favor of Plaintiff and the Class for violations of Minnesota's consumer protection statutes, for an award of actual damages, costs of litigation and attorneys' fees pursuant to Minn. Stat. § 8.31, subd. 3a;

6.      Declare Stake's operation of a real-money internet casino in Minnesota to be illegal and enter an injunction mandating Stake to cease operating in Minnesota;

7.      Award the Class prejudgment interest at the applicable rate;

8.      Award the Class all direct and consequential damages allowed by law;

9.      Award the Class all appropriate equitable and injunctive relief;

10.     Award the Class its reasonable costs and attorney fees; and

11.     Grant any further relief that the Court deems appropriate.

### **TRIAL BY JURY**

Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7; Fed. R. Civ. P. 38.

Respectfully submitted,

Dated: August 15, 2025                    By: */s/ Vildan A. Teske*

Vildan A. Teske (#241404)
Lee T. Owen (#505523)
TESKE LAW PLLC

80 South Eighth Street, Suite 900
Minneapolis, MN 55402
(612) 767-0521
teske@teskelaw.com
owen@teskelaw.com

Garrett D. Blanchfield (#2098550)
Brant D. Penney (#316878)
Roberta A. Yard (#322295)
REINHARDT WENDORF & BLANCHFIELD
80 South Eighth Street, Suite 900
Minneapolis, MN  55402
(651) 287-2100
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com
r.yard@rwblawfirm.com

Daniel C. Hedlund (#258337)
Daniel J. Nordin (#392393)
Joe E. Nelson (#402378)
GUSTAFSON GLUEK PLLC
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 333-8844
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com
jnelson@gustafsongluek.com

*Counsel for Plaintiff and the Putative Class*