**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| CHRIS WOLTERS, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff,*<br> v.<br><br>SWEEPSTEAKS LIMITED, d/b/a Stake.us,<br><br>   *Defendant.* | Case No.: 0:25-cv-3280 |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF
MOTION TO COMPEL ARBITRATION**

**INTRODUCTION**

To create an account on the Stake.us platform (the "Platform"), Plaintiff Chris Wolters was presented with and required to affirmatively assent to the Platform's Terms and Conditions.  The Terms and Conditions contained an Arbitration Agreement, governed by the Federal Arbitration Act ("FAA"), that required all disputes between Plaintiff and Sweepsteaks Limited to be resolved through individual arbitration administered by the American Arbitration Association ("AAA"). Plaintiff clicked a checkbox unambiguously indicating his assent to the Terms and Conditions and created his account on the Platform. Plaintiff does not meaningfully dispute these facts.

Notwithstanding these circumstances, Plaintiff asks this Court to do what neither Minnesota nor federal law require or permit: disregard the Arbitration Agreement and its delegation clause and decide the merits of this case—the Platform's legality—through this Motion.  Sweepsteaks Limited strongly disputes Plaintiff's meritless allegations about the supposed illegality of its Platform, and is prepared to defend against them.  But now is not the time, and this Court is not the venue, to litigate the merits of Plaintiff's claims.  Plaintiff seeks to transform an enforceability challenge, to be resolved by the arbitrator, into a formation challenge, to be resolved by this Court.  Multiple courts have seen and rejected this maneuver.  This Court should do the same.

Plaintiff also takes issue with several provisions throughout the Terms, which he claims render the Terms and the Arbitration Agreement unconscionable.  These challenges, to the extent they even relate to the Arbitration Agreement, are also for the arbitrator, not this Court, to resolve.  Even if this Court were to consider the arguments on their merits,

1

Plaintiff's unconscionability arguments amount to nothing more than a generalized disagreement with the arbitration process as a whole, and thus fly in the face of the liberal federal policy favoring arbitration. This Court should therefore reject Plaintiff's assertions.

Plaintiff's formation challenge fares no better. Plaintiff unambiguously agreed to the Arbitration Agreement when he accepted the Terms and created his account on the Platform. Plaintiff's argument to the contrary relies on nothing more than conjecture and factually distinguishable caselaw.

Accordingly, for the reasons stated herein, this Court should reject Plaintiff's attempts to circumvent his contractual obligations and order the parties to arbitrate this dispute pursuant to the Arbitration Agreement.

## DISCUSSION

### I.      This Court Should Reject Plaintiff's Attempt to Litigate the Merits.

Plaintiff primarily seeks to avoid the Arbitration Agreement by encouraging this Court to use this Motion to address the central underlying issue in the case: whether the Platform's games are unlawful gambling. Courts consistently reject this line of argument because, as Plaintiff acknowledges, the FAA requires Courts to consider arbitration agreements separately from the remainder of the contract within which they are contained. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). Simply put, the alleged illegality of the contract is not dispositive as to the enforceability of the arbitration agreement contained therein. *M.A. Mortenson Co. v. Saunders Concrete Co., Inc.*, 676 F.3d 1153, 1157 (8th Cir. 2012) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–

71 (2010)) ("[A] court must enforce a 'specific agreement to arbitrate' despite a litigant's challenges to the contract as a whole or to another provision of the contract.").

Plaintiff couches his illegality argument as an attack on the Arbitration Agreement's formation, but his argument is properly characterized as an attack on the Agreement's enforceability. Under Minnesota law, there are three elements of contract *formation*: "an offer, acceptance, and consideration." *See Ballou v. Asset Marketing Servs., LLC*, 46 F.4th 844, 851 (8th Cir. 2022) (citing *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 625, 627 (Minn. 1983)). All three elements are present here. On the other hand, courts "decline to *enforce*" illegal contracts. *Holland v. Sheehan*, 122 N.W. 1, 2 (Minn. 1909) (emphasis added); *see also Boyle v. Sweepsteaks Ltd.*, No. 8:25-cv-302, 2025 WL 1674480, at *5 (C.D. Cal. May 19, 2025) (finding that because the "doctrine of illegality 'is grounded on considerations of public policy,' the question of illegality is a matter of enforcement rather than formation"); *M.M. v. Sweepsteaks Limited*, Civil Action No. 25-11481-RGS, 2025 WL 3240413, at *1 (D. Mass. Nov. 20, 2025) (rejecting plaintiff's contention that an agreement to arbitrate had never been formed because of the contract's underlying illegality and concluding that the "parties' disagreement involves a different issue – whether the arbitration clause itself is void.").

This distinction is important because it demonstrates why the Arbitration Agreement is enforceable notwithstanding Plaintiff's meritless claims that the Terms are void as a gambling contract. A contract to arbitrate was *formed* when Plaintiff accepted Sweepsteaks Limited's offer to accept the Terms, and both parties gave consideration by disclaiming their rights to pursue litigation. *See Ballou*, 46 F.4th at 851. Whether the Arbitration

3

Agreement is *enforceable* is a different question—and it is one that must be left to the arbitrator for two primary reasons.

First, the parties unambiguously delegated enforceability and validity challenges to the arbitrator. Where, as here, the parties agree to only one contract, and that contract contains an arbitration clause with an otherwise valid and enforceable delegation clause, courts must send all arbitrability disputes to arbitration. *See Coinbase, Inc. v. Suski*, 602 U.S. 143, 144, 152 (2024). Because the parties delegated the arbitrability issue to the arbitrator, the *only* issues for the Court to resolve are formation and the specific validity of the delegation clause. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010). Plaintiff's illegality challenge, however, raises an issue of enforceability, so the Court must end its analysis here and compel this dispute to arbitration.

In a footnote, Plaintiff suggests that the Arbitration Agreement's delegation clause is insufficient to establish the parties' clear and unmistakable intent to delegate threshold issues to the arbitrator. (Dkt. 17 at 7 n.4). Plaintiff zeroes in on the first sentence of § 26.6(a) of the Terms, "[w]e both agree to arbitrate," but conveniently ignores the next sentence of § 26.6(a): "By agreeing to these Terms, both you and Stake agree that any and all Disputes, including without limitation any question regarding existence, validity, *enforceability*, or termination of these Terms . . . shall be referred to and finally resolved by arbitration . . . ." (*Id.*) (emphasis added). This sentence provides the requisite clear and unmistakable evidence that the parties delegated threshold arbitrability questions to the arbitrator. *See A Better Way to Buy, Inc. v. Ashley Furniture Indus., LLC*, 750 F. Supp. 3d 1032, 1040 (D. Minn. 2024) (language empowering arbitrator to determine the

"enforcement, interpretation or validity" of the arbitration agreement provided clear and unmistakable evidence of parties' intent to delegate threshold issues to the arbitrator). Moreover, the parties further demonstrated intent to delegate arbitrability issues to the arbitrator by incorporating the AAA Rules into the agreement. (Terms, § 26.6(a)). *See Fallo v. High-Tech Ins.*, 559 F.3d 874, 877–78 (8th Cir. 2009).

Second, even in the absence of the delegation clause, *Buckeye* forecloses Plaintiff's illegality challenge. Like Plaintiff here, the plaintiff in *Buckeye* argued that because the contract containing the arbitration provision was illegal and void *ab initio*, the question of the contract's legality must be resolved by a court before arbitration. *Buckeye*, 546 U.S. at 443. The Court rejected this argument, instructing that when the "crux of the complaint is that the contract as a whole (including the arbitration provision) is rendered invalid" by an assertion of illegality, then "the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445-46.

Not only is alleged illegality the "crux" of Plaintiff's complaint, it is also the argument underlying Plaintiff's challenge to the Terms. As Plaintiff puts it, "[t]he Terms belong to a category of agreements that can never be legally formed in Minnesota." (Opposition, Dkt. No. 17, at 9). Plaintiff's illegality argument constitutes a baseless attempt to litigate the question at the center of this entire lawsuit—whether the Platform and the games offered thereon are legal. Because deciding this issue now would be incompatible with *Buckeye*'s "crux of the complaint" rule and a longstanding body of federal law, this Court should decline Plaintiff's improper invitation to address the merits in ruling on this Motion to Compel Arbitration. *Lackie Drug Store, Inc v. OptumRx Inc.*,

5

143 F.4th 985, 997 (8th Cir. 2025) (quoting *Benchmark Ins. Co. v. SUNZ Ins. Co.*, 36 F.4th 766, 772 (8th Cir. 2022) ("[A] court may not 'rule on the potential merits of the underlying' claim that is assigned by contract to an arbitrator.") (alteration in original)).

Courts across the country, following *Buckeye*, have repeatedly rejected similar illegality arguments to the Platform's Terms. In *Boyle v. Sweepsteaks Limited*, the court determined that because the alleged illegality of Sweepsteaks Limited's Platform "permeate[d] throughout the complaint and [could] not be seen in any as collateral to [the plaintiff's] main purpose in the complaint," *Buckeye*'s "crux of the complaint" rule applied and the challenge to the Arbitration Agreement could not be severed from the challenge to the terms as a whole. *Boyle*, 2025 WL 1674480, at *5. Additionally, in *M.M. v. Sweepsteaks Limited*, the court rejected the plaintiffs' challenge to the validity of the Arbitration Agreement, concluding that because the parties delegated arbitrability to the arbitrator, it could not resolve the matter in the first instance. 2025 WL 3240413, at *1.

Courts have similarly dismissed nearly identical illegality arguments raised against other online platforms' terms and conditions. *See Doe v. VGW Malta Ltd.*, 1:23-cv-3226, 2023 WL 8234650, at *3 (N.D. Ga. Nov. 28, 2023) (finding that "whether a contract was illegal or void because it was not permitted under state law is a question for the arbitrator"); *Ball v. Skillz*, No. 2:20-cv-888, 2020 WL 6685514, at *5 (D. Nev. Nov. 12, 2020) (rejecting an attempt to "couch [an illegality] challenge as one specific to the arbitration agreement" because such a challenge goes to "the validity of the entire contract, which, under *Buckeye*, should be resolved in arbitration").

6

Plaintiff claims that because the Arbitration Agreement provides that "[b]y agreeing to these Terms," he and Sweepsteaks Limited agreed to arbitrate their disputes, his illegality challenge to the validity of the Terms as a whole is actually a specific challenge to the Arbitration Agreement. However, the Arbitration Agreement's reference to agreement to the Terms is inapposite because *Buckeye* and its progeny are necessarily based on the idea that the Arbitration Agreement is contained within a larger contract to which the parties actually agree.

In *Buckeye*, for example, the plaintiffs signed a "Deferred Deposit and Disclosure Agreement." *Buckeye*, 546 U.S. at 442. That agreement contained an arbitration clause that began with the phrase "[b]y signing this Agreement" before requiring the parties to resolve their disputes in arbitration. *Id.* The plaintiffs resisted the arbitration clause by asserting that the agreement as a whole violated state lending and consumer-protection laws. *Id.* at 443. Despite the arbitration clause's "[b]y signing this Agreement" language, the Supreme Court characterized the plaintiffs' opposition to arbitration as being "on a ground that directly affects the entire agreement," rather than the specific validity of the arbitration clause, and held that the arbitrator had to resolve the plaintiffs' challenge. *Id.* at 444, 449.

Moreover, courts have already considered and rejected illegality challenges to the same Arbitration Agreement at issue here, which contained the same "[b]y agreeing to these Terms" phrase. *See Boyle*, 2025 WL 1674480, at *5; *M.M.*, 2025 WL 3240413, at *1. As the *Boyle* Court found, "[t]he problems and illegality of online gambling permeate throughout the complaint," so "the 'crux of the complaint' rule from <u>Buckeye Check</u>

7

Cashing applies squarely to this case." *Boyle*, 2025 WL 1674480, at *5. This Court, presented with the same arguments and the same Terms, should reach the same conclusion.

## II.     This Court Should Reject Plaintiff's Meritless Unconscionability Arguments.

Plaintiff further attempts to escape his contractual obligation to arbitrate his claims by arguing that the Arbitration Agreement is unconscionable. As with illegality, this Court need not reach Plaintiff's unconscionability arguments because, as discussed above, the parties clearly and unmistakably delegated questions of enforceability to the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). But even if Plaintiff's unconscionability challenge were properly before this Court, he fails to demonstrate that the Arbitration Agreement is procedurally or substantively unconscionable.

Under Minnesota law, a contract is unconscionable if "no clear-thinking person would make it, or if no such person would accept it." *Carlson v. BMW Fin. Servs. NA, LLC*, 762 F. Supp. 3d 820, 826 (D. Minn. 2025). "Challenges to arbitration clauses on unconscionability grounds are routinely rejected by the courts." *Id.* As the party asserting unconscionability, Plaintiff "must show that the contract is *both* procedurally and substantively unconscionable." *Id* (emphasis added).

### A. The Arbitration Agreement is Not Procedurally Unconscionable

Starting with procedural unconscionability, Plaintiff argues that because Sweepsteaks Limited retained the right to unilaterally amend the Terms, the Terms are procedurally unconscionable. (Dkt. 17 at 26–29). This argument fails. Minnesota law permits unilateral modifications to contracts, and courts have held that provisions allowing unilateral modification do not render an arbitration agreement unconscionable. *See Zhang*

8

*v. UnitedHealth Grp.*, 367 F. Supp. 3d 910, 915–17 (D. Minn. 2019); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016).

Moreover, the Terms specifically warn users, in the first section, that the Terms may be updated periodically and that by "continuing to access [the] Platform, your Customer Account, and/or [the] Games," users "are deemed to have read and to be bound by any such updates. (Terms, § 1). The Terms further caution that if a user "do[es] not wish to be bound by these Terms, any updated Terms or any other linked policy, rules or terms," the user "may not continue to access the Platform or any of the Games." (*Id.*). Accordingly, the Terms gave Plaintiff ample notice of Sweepsteaks Limited's right to amend the Terms. *See Zhang*, 367 F. Supp. 3d at 915–17 (concluding that unilateral modification provision did not render contract illusory or substantively unconscionable).

As with any contract, the Terms are subject to an implied covenant of good faith and fair dealing. *See In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502–03 (Minn. 1995). Sweepsteaks Limited may not "unjustifiably hinder" another party's performance of the contract or act in bad faith by "refus[ing] to fulfill some duty or contractual obligation based on an ulterior motive." *Id.*; *Residential Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910, 918 (8th Cir. 2013). Sweepsteaks Limited's ability to modify the Terms is limited by the implied covenant of good faith and fair dealing and is not without limit. Nor is there any evidence that Sweepsteaks Limited deliberately attempted to manipulate the Terms or take advantage of its users.

Accordingly, Plaintiff cannot establish procedural unconscionability. As a result, because both procedural and substantive unconscionability are required, this Court may

end its analysis here and need not address Plaintiff's substantive unconscionability arguments. *See Carlson*, 762 F. Supp. 3d at 826.

### B. The Arbitration Agreement is Not Substantively Unconscionable

Even if Plaintiff could establish procedural unconscionability, his challenge would still fail because he cannot demonstrate substantive unconscionability. Plaintiff invokes several provisions of the Terms that, according to him, "unreasonably favor" Sweepsteaks Limited. (Dkt. 17 at 20). Regarding the actual Arbitration Agreement, Plaintiff identifies provisions (1) requiring all arbitrations to proceed individually (Terms, § 26.7), (2) requiring claimants to file informal complaints before filing for arbitration (Terms, § 26.5), and (3) requiring arbitrations to remain confidential (Terms, § 26.6(b)). (Dkt. 17 at 20–21, 25).

Beginning with Plaintiff's first objection, the Supreme Court has consistently upheld the enforceability of collective-arbitration waivers and agreements to arbitrate individually. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343–44 (2011) (holding that the FAA preempts claims that collective-arbitration waivers are unconscionable under state law). Collective arbitration "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id*. at 348. Given these circumstances, the Supreme Court has recognized that parties may agree to preclude class-wide arbitration in favor of less-costly and more efficient procedures. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 509 (2018) (parties may agree to "alter arbitration procedures to suit their tastes[.]"). That is precisely what the parties have done here.

10

Plaintiff relies on *MacClelland v. Cellco P'ship*, which found unconscionable a mass arbitration provision that permitted only ten cases to proceed at one time. *See* 609 F. Supp. 3d 1024, 1040 (N.D. Cal. 2022). Here, however, the collective-arbitration waiver imposes no limit on the number of cases that can proceed at any given time. *See Silva v. WhaleCo, Inc.*, No. 24-cv-2980, 2024 WL 4487421, at *5 (N.D. Cal. Oct. 10, 2024). The collective-arbitration provision also allows a claimant and Sweepsteaks Limited to consent to consolidation of claims into a collective action if both parties agree. (Terms, § 26.7(a)).

Plaintiff also attempts to argue that the collective-arbitration waiver prevents claimants from choosing their attorneys. (Dkt. 17 at 20–21). Not so. Nothing in the Terms restricts a claimant's ability to hire the counsel of their choice. (*See generally* Terms). Plaintiff suggests that "there are likely less than a dozen consumer lawyers in Minnesota" willing to arbitrate claims against Sweepsteaks Limited. (*Id.* at 21). This is pure speculation. But even if that were true, this Court should not allow plaintiffs' conjecture to override the documented and legitimate reasons that would prompt parties, as they did here, to contract for individualized arbitration. *See AT&T Mobility*, 563 U.S. at 348.

Secondly, Plaintiff fails to show that the requirement for claimants to informally notify Sweepsteaks Limited of a complaint before filing for arbitration renders the Arbitration Agreement unconscionable. Plaintiff presents no evidence that this informal dispute resolution procedure prevents potential claimants from pursuing their rights. Notably, at least one court has held that a provision which required the parties to engage in mediation (a process that would undoubtedly be more costly and time consuming than the informal dispute resolution contemplated by the Terms) *in addition* to arbitration did not

11

render a dispute resolution agreement unconscionable. *See Gaskins v. Swope Ventures, Inc.*, 645 F. Supp. 3d 682, 689–90 (W.D. Ky. 2022). In any event, Plaintiff's complaint about the supposed unconscionability of the informal dispute resolution procedure is for the arbitrator, not this Court, to decide. *See Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1131 (S.D. Cal. 2024).

Plaintiff claims that Sweepsteaks Limited has not registered its arbitration clause with the AAA and, as a result, a claimant would have to wait "considerable time" for the AAA to review the clause. (Dkt. 17 at 23). Again, this is purely speculative. Moreover, Plaintiff overlooks AAA Rule R-12(f), which provides that the AAA will "conduct an *expedited* review" of the arbitration clause, at Sweepsteaks Limited's expense, if the clause has not been submitted prior to an arbitration being filed. (Ex. E, AAA Rule R-12(f)) (emphasis added). Plaintiff's allegation that this will cause undue delay is thus without merit.

Third, Plaintiff's challenge to the Arbitration Agreement's confidentiality clause fares no better. Confidentiality is "a paradigmatic aspect of arbitration," *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 71 (2d Cir. 2023), so much so that Plaintiff's "attack on the confidentiality provision is, in part, an attack on the character of arbitration itself," *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 175 (5th Cir. 2004); *see also Concepcion*, 563 U.S. at 345 (recognizing parties' discretion to agree that arbitration proceedings should be kept confidential). Such a generalized attack on the Arbitration Agreement is inconsistent with the "liberal federal policy favoring arbitration agreements." *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022); *see also Am. Exp. Co. v. Italian*

12

*Colors Rest.*, 570 U.S. 228, 233 (2013) (providing that courts must "rigorously enforce" arbitration agreements according to their terms). To this end, Plaintiff's complaint that confidential arbitration prevents the creation of legal precedent is nothing more than a blatant attack on the arbitration process itself. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682–83 (2010) (explaining that the FAA is intended to give effect to the parties' intent to forego the legal process and submit their disputes to private dispute resolution).

Plaintiff's argument that confidentiality unconscionably benefits Sweepsteaks Limited as a "repeat player" also fails. "[A] corporate repeat-player" can use "confidential *settlements*" in court to prevent the court "from making adverse findings." *Iberia*, 379 F.3d at 176. Notably, Minnesota law does not prohibit confidential settlements. *See Minneapolis Star & Tribune Co. v. Schumacher*, 392 N.W.2d 197, 206 (Minn. 1986) (holding that "privacy interests asserted by the litigants were strong enough" to justify restricting public access to settlement documents). Thus, to the extent Sweepsteaks Limited has a "repeat player" advantage, this benefit is not unique to the forum of arbitration and would be equally present if this case were litigated in court.

Plaintiff also claims that provisions outside the Arbitration Agreement are substantively unconscionable, including provisions limiting Sweepsteaks Limited's liability and requiring users to indemnify Sweepsteaks Limited. (Dkt. 17 at 21–24). Because these provisions are not part of the Arbitration Agreement, this Court need not consider them at all in deciding whether to compel arbitration. *See Buckeye*, 546 U.S. at 444. And even if the Court were to believe that such unrelated provisions were

13

unenforceable for some reason, the Court should sever the provisions and enforce the Arbitration Agreement.

The Terms contain a clear severability clause providing that if "any provision" is "deemed invalid, illegal, or unenforceable," the remaining provisions, including the Arbitration Agreement, are fully enforceable. (Terms, § 27.6). When a contract contains an enforceable severability clause, courts must sever any invalid provisions in the contract and compel arbitration according to the valid arbitration agreement. *See Buckeye*, 546 U.S. at 444; *Benchmark Ins. Co. v. SUNZ Ins. Co.,* 36 F.4th 766, 772 (8th Cir. 2022). "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye*, 546 U.S. at 445–46. Plaintiff therefore cannot nullify the parties' valid Arbitration Agreement by challenging other unrelated provisions of the Terms.

Even if the Court concludes that it has the authority to resolve these challenges, it should still reject them. "[C]apping monetary damages is a standard practice and is not unconscionable." *Cohen v. CBR Sys., Inc.*, 625 F. Supp. 3d 997, 1005 (N.D. Cal. 2022). And Plaintiff provides no explanation for why the indemnification provision renders the Arbitration Agreement unconscionable. Accordingly, Plaintiff has not met his burden to establish substantive unconscionability. *See Carlson*, 762 F. Supp. 3d at 826.

## III. The Evidence Establishes That Plaintiff Assented to an Enforceable Agreement to Arbitrate.

Next, Plaintiff questions whether the evidence Sweepsteaks Limited submitted along with its Motion to Compel Arbitration is sufficient to prove the existence of the

14

Arbitration Agreement.  (Dkt. 17 at 29–32).  Notably, Plaintiff does not dispute that (1) he created an account on the Platform, (2) to create an account, he was required to click a checkbox indicating his assent to the Terms and Conditions, or (3) if he had refused to accept the Terms, he would not have been able to create an account or use the Platform. Edward Craven's Declaration demonstrates each of these points and makes clear that the attached Terms in effect when Plaintiff created his account on November 25, 2022 were applicable and operative.  (Craven Decl. ¶¶ 8–11, 18).

Plaintiff agreed to arbitrate his disputes with Sweepsteaks Limited when he clicked the checkbox indicating that he accepted the Terms.  (*Id.* ¶ 11).  Plaintiff does not (and cannot) dispute that he clicked the checkbox assenting to the Terms or that clicking the checkbox was required for him to be able to access the Platform and play the games that he claims are illegal.  Nor does Plaintiff present any evidence contradicting any of the statements in Edward Craven's Declaration.

Plaintiff relies on *Foster v. Walmart*, 15 F.4th 860 (8th Cir. 2022) to dispute the existence of an agreement to arbitrate, but that case is distinguishable.  When Plaintiff made his account with the Platform in November 2022, the Platform's Terms were presented in a clickwrap format.  (Craven Decl. ¶ 11).  A clickwrap agreement "requires the user to explicitly assent by clicking 'I agree' (or something similar) before using the website or purchasing a product."  *Foster*, 15 F.4th at 863.  In *Foster*, however, the terms and conditions were presented as a browsewrap agreement.  *Id.*  A browsewrap agreement "imputes assent through the user's performance of some specific act."  *Id.*  As the *Foster* Court recognized, "courts rarely find problems with clickwrap agreements," as "mutual

15

assent is rarely an issue because the user sees the list of the terms and conditions before accepting them." *Id.*

Here, Plaintiff was required to specifically indicate assent to the Terms in order to create his account. *Id.* In *Foster*, by contrast, "[n]one of the 29 plaintiffs were ever asked to agree to the terms and conditions on Walmart's website." *Id.* Accordingly, the Court's analysis as to whether Walmart's website gave a reasonably prudent user inquiry notice of its terms and conditions does not control here. The clickwrap agreement itself was enough to infer Plaintiff's assent. *See Engen v. Grocery Delivery E-Services USA Inc.*, 453 F. Supp. 3d 1231, 1238 (D. Minn. 2020).

Moreover, when Plaintiff accepted the updated version of the Terms on May 18, 2023, he did so via a "scrollwrap" agreement. (Craven Decl. ¶ 12). "Scrollwrap" agreements require "users to physically scroll through an internet agreement and click on a separate 'I agree' button in order to assent to the terms and conditions of the host website." *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 465 (S.D.N.Y. 2017). "[T]he agreement with the strongest notice is the scrollwrap agreement." *Arif v. Wells Fargo Bank, N.A.*, No. 4:24-cv-4044, 2025 WL 949551, at *9 n.8 (D.S.D. 2025). Edward Craven's Declaration makes clear that, on May 18, 2023, the Platform required Plaintiff "to scroll through the entirety of the Terms and Conditions" and check a box indicating his assent. (Craven Decl. ¶ 12). This further establishes Plaintiff's agreement to submit his disputes to arbitration. Plaintiffs' assertions to the contrary should be dismissed.

**IV.   This Court Should Stay All Proceedings While It Considers This Motion.**

Lastly, Plaintiff asserts that this Court should allow litigation to continue while it considers this Motion to Compel Arbitration.  (Dkt. 17 at 32).  Plaintiff speculatively suggests that he might have to wait "potentially a year" to begin "even the most preliminary stages of this litigation." (*Id.*).  But even if Plaintiff might be inconvenienced by a stay, Sweepsteaks Limited would face greater prejudice if litigation is allowed to continue despite Plaintiff's assent to arbitrate his disputes.

First and foremost, allowing litigation to continue would require Sweepsteaks Limited to file substantive dispositive motions, answer Plaintiff's complaint, and participate in discovery, which could result in a waiver of its right to enforce the Arbitration Agreement.  *See Lackie Drug Store*, 143 F.4th at 990–91, 993–94, 997 (explaining that the defendant waived its right to compel arbitration by filing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), answering the complaint, and serving discovery disclosures).

Furthermore, allowing the case to substantively proceed during the pendency of this Motion would undermine the purposes of arbitration and result in the needless expenditure of resources by both the parties and the Court. This Court maintains broad authority to stay proceedings "as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In accordance with this inherent authority, and pursuant to Fed. R. Civ. P. 26(c), the Court may grant a stay of discovery upon a finding of good cause. *Lovlie v. United States*, 2024 WL 4100380, at *1 (D. Minn. Sept. 6, 2024). The Court must balance the potential harm produced by a delay in discovery "against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *Riehm v. Engelking*, 2006 WL 8443398, at *2 (D. Minn. June 12, 2006) (internal quotation marks omitted)

17

(quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)). This Court has recognized that good cause exists for the issuance of a stay when a dispositive motion is pending given that any minor delay in discovery will be "substantially outweighed by the possibility that the District Court's" ruling on the dispositive motion "will either obviate the need for further discovery, or further the define the areas for which discovery will be necessary." *Id.* (quoting *Zutz v. Nelson*, 2009 WL 10711548, at *4 (D. Minn. Jan. 12, 2009)).

Here, there is good cause for the Court to stay the case pending resolution of this dispositive motion. Sweepsteaks Limited specifically contracted with Plaintiff to resolve their disputes via arbitration. Requiring discovery while the Motion to Compel Arbitration remains pending will force Sweepsteaks Limited to engage in the very processes and expenses of litigation it sought to avoid by entering into the arbitration agreement. In the event the Motion to Compel Arbitration is granted, this case must be stayed (in accordance with Supreme Court precedent) and the parties will be directed to resolve their dispute via arbitration. *Carlson*, 762 F.Supp.3d at 830 (observing that the Supreme Court's decision in *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) directs the district court to "stay a lawsuit" pending resolution in arbitration when a party so requests). Under such circumstances, the need for discovery will be obviated. Accordingly, any minor delay in discovery resulting from a stay is substantially outweighed by the likelihood that the Court's ruling on the dispositive motion "will eliminate" the "burden and expense" of unnecessary discovery. *Lovlie*, 2024 WL 4100380, at *1.

18

For these reasons, this Court should reject Plaintiff's request and stay all proceedings in this case during the pendency of the Motion. Moreover, in the event the Motion is granted, Sweepsteaks Limited requests that this Court stay these proceedings consistent with *Spizzirri*'s dictate.

## **CONCLUSION**

For the foregoing reasons and the reasons provided in Sweepsteaks Limited's Motion to Compel Arbitration (Dkt. 12), Sweepsteaks Limited respectfully requests that this Court enter an order compelling arbitration and staying this action pending the outcome of the arbitration proceedings.

Dated: December 19, 2025    Respectfully submitted,

          /s/ *A. Jeff Ifrah*

          A. Jeff Ifrah (*pro hac vice*)
jeff@ifrahlaw.com
Abbey Block (*pro hac vice* forthcoming)
ablock@ifrahlaw.com
Robert W. Ward (*pro hac vice* forthcoming)
rward@ifrahlaw.com
IFRAH PLLC
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
(202) 524-4140

*Counsel for Defendant*

**OF COUNSEL:**

**PARKER DANIELS KIBORT LLC**

Abraham S. Kaplan (#399507)
Andrew D. Parker (0195042)
Eric H. Zumbach (#0399460)
888 Colwell Building
123 North Third Street
Minneapolis, MN 55401
(612) 355-4100
kaplan@parkerdk.com
parker@kaplandk.com
zumbach@kaplandk.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| CHRIS WOLTERS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br>v.<br><br>SWEEPSTEAKS LIMITED, d/b/a Stake.us,<br><br>*Defendant*. | Case No.: 0:25-cv-3280 |

**CERTIFICATION OF COMPLIANCE**

I, A. Jeff Ifrah, hereby certify that this Memorandum complies with the length limitation of Local Rule 7.1(f) and with the type-size limitation of Local Rule 7.1(h). I further certify that this Memorandum and Sweepsteaks Limited's Memorandum of Law in support of its Motion to Compel Arbitration, contain a combined 9,492 words. I further certify that, in preparation of this Memorandum, I used Microsoft Office Word Version 25-10, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count.

Dated: December 19, 2025          Respectfully submitted,

/s/ *A. Jeff Ifrah*
A. Jeff Ifrah (*pro hac vice*)
jeff@ifrahlaw.com
Abbey Block (*pro hac vice* forthcoming)
ablock@ifrahlaw.com
Robert W. Ward (*pro hac vice* forthcoming)
rward@ifrahlaw.com

1

IFRAH PLLC
1717 Pennsylvania Ave. NW, Suite 650
Washington, D.C. 20006
(202) 524-4140

*Counsel for Defendant*